The next case on the calendar is United States v. Ryan. All right, we have Mr. McLaughlin for the appellant. You can begin whenever you're ready, Mr. McLaughlin. I see you reserved two minutes for rebuttal. Thank you. Good morning, Your Honors. Devin McLaughlin on behalf of Defendant Appellant Asia Ryan. I'd like to address the procedural unreasonableness arguments related to her sentence. As the court sees from the briefing, the principal procedural error argument is that the court relied on a mistaken view of facts in going ahead and imposing upward variance on Ms. Ryan. Specifically, she understood that Ms. Ryan was the driver on the August 27th driving incident. And as the government admits in its briefing, and I'm sure will admit today, there's no evidence at sentencing that went ahead and supported the notion that she was the driver on August 27th. And the August 27th incident of driving was the one where the employee encountered the car doing the getaway after the robbery. And the employee, unfortunately, was dragged and hurt and injured in that incident. The reason we know that this is at the heart of the court's variance decision is as follows. If you look at the sentencing transcript on pages A111 and A112, Judge Bryant went ahead and indicated, obviously, a person who drags another person with a car or who puts a car in gear when someone is standing in front of it is a person from whom the public needs to be protected. So that tells us that she's indicating and understanding that Ms. Ryan was the person who drove the vehicle, dragging the car. That was at the very end of the sentencing on the issue of overall dangerousness. Shouldn't we look at the fact that there was a lot of details earlier in the proceeding about which incidents your client was the driver on? And there were three that were being considered. And the prosecutor went through in great detail which ones your client, the two that your client was the driver on, the third one that you're referencing where she was just in the car. And the district court made particular findings upon that. So why shouldn't we consider that as well? It wasn't like that was the only reference. I absolutely agree, Your Honor. Why can't we look at what happened earlier? So it tends to make sense logically that the finding that's most closely related to the announcement of the variance or the one that's actually stated as part of the variance is the one that one should focus on. So if we go to the next page of the transcript, A112, where she's imposing the variance, she ends up doing what the court tells her to do, which is specify the basis for the variance. And she says, the fact that the defendant recklessly disregarded the well-being of others and, in fact, injured another person in the commission of offense, the court feels an upward departure is appropriate. The injured person incident on the facts presented to the court was the August 27th incident. And we know that. The August 28th, one of the August 28th ones, the driver. The mirror hit the driver. The mirror hit the driver, and the victim testified to hearing about that. I was in front of the car, and she looked at me, and I looked at her, and I just got out of the way in time. Correct. Correct, Your Honor. Again, there was a lot of detail, and that was an injury, right? Well, the reality is there's no fact that there was an injury. I know, but she could have been referencing that very easily. Two of the victims testified at sentencing. One was on the August 27th robbery, the husband-wife team. If you look through the whole transcript, the only discussion by either probation or a victim referencing injury is the August 27th incident. So the transcript on pages 895, the wife talks about on August 27th, the husband being hurt. He ended up injuring his elbow and knee. If you look at the transcript of the August 28th employee who stood in front of the car and stated what Your Honor just indicated, he doesn't talk about being injured. There's no mention of him being hit by the car. And so a fair reading of what Judge Bryant is saying when she's relying on the fact that Asia injured somebody in the commission of the offense, I submit that the fair reading is that that's related to the August 27th incident because that's the only one where injury, in fact, was indicated. If you look at the PSR and the second addendum to the PSR, there's nothing that states injury. The word injury isn't included there. So you're suggesting she forgot what she had just heard minutes earlier in this very detailed discussion? It's not a forgot. Sorry, Your Honor. What is? It's not a forgot. It is a mistaken understanding that Ms. Ryan was involved in the August 27th incident. And we know she had that mistaken belief because she said on A111, obviously a person who drags another person with a car. So that's a reference to Asia Ryan. She believes Asia Ryan is the one who dragged the person with the car. There's no factual support for that. You are correct, Your Honor, that there are many other. The statement was an or. Sorry? It was an or when she said that, right? Correct. And the other part did apply to Ms. Ryan, right? Correct. And the one that where there was the one that she was in the driver in, she was in the car. It was part of the conspiracy that day, right? So why can't a court, in considering the overall dangerousness of the conspiracy that she participated in, consider that as well? At that point in the proceeding, she's talking about the dangerousness posed by the criminal conduct of the defendant. Certainly you can consider what conspiracy she was involved in, in which she was in the car at the time and had driven on other occasions, right? Absolutely. I mean, legally, the court could have said, you're part of a conspiracy that engaged in a bunch of dangerous behavior, and you were the passenger in a vehicle that dragged an individual. She could have said that. That isn't what she said. That's a problem for you, because you're on plain error review here. We are on plain error, Your Honor. To that extent, how is the district judge talking about it in the conjunction, entitled to consider the dangerousness of the conspiracy as a whole? How is this a plain error on the part of the judge, much less one that affected your client's substantial rights or demonstrates manifest injustice in a three-year sense? So obviously, I am looking at the language in terms of, obviously, a person who drags another person with a car. That isn't directed towards, in her speak, a co-conspirator. It's directed towards Ms. Ryan. And I submit that the fair reading of that is that she believed Ms. Ryan was the one who drove the vehicle. In terms of substantial rights, Your Honor, obviously the government spent a lot of time on that. Well, even if she did, I mean, let me assume that. She was entitled to consider the conspiracy as a whole. She was accurate in understanding that your client, when she was driving the car, struck somebody in the hand, hit a police car. It's not like when she was driving, nobody and nothing got hurt. And so to that extent, I'm not sure why we have a plain error, why a plain error would warrant a resentencing in this case. So I certainly agree that there are a lot of facts there that if the court decided, I'm going to upwardly vary because of the nature of how you broke into these stores, or I'm going to upwardly vary because your co-conspirator went ahead and dragged a person, or I'm going to upwardly vary because you've gotten a lot of lenience before, and so therefore, now is not the time for lenience. If that's how she had articulated it, fine. But the way she articulated it, and obviously we're all looking at 112, when she's stating the specific basis for upward variance, she says, in fact, you injured another person in the commission of the offense. Well, she did in the sense that she's responsible for it as a co-conspirator, right? And she did injure the person whose hand she struck. Well, there's zero evidence that that person was actually injured. There's nothing in the record from the person who testified. He didn't even say he was injured. All right, we'll go back to Mary Jo. She's a member of the conspiracy that dragged somebody. She's chargeable with that conduct. She may not have been the principal, but she's a conspirator on it. So that part of the judge's statement is not incorrect. And so I legally agree, Your Honor, that she could have upwardly varied if she decided that co-conspirator participation was enough. My reading of the transcript is that she was focused on Ms. Ryan's actions. In fact, that's what took her in terms of the enhancement. You know, she focused on what did this lady actually do. And when you have – we defer to the discretionary – The upward departure was based on the aggressive nature of multiple robberies. Now, she was not the principal aggressor in the first robbery, but in every other robbery she was not only involved in aggression, she was the aggressor. So are you suggesting to me that if the judge had understood that she wasn't the driver, there's a significant chance she wouldn't have imposed this sentence? The ask that I have, Your Honor, is that when the district court to whom we defer on making these decisions upwardly varies in a way that's either 20% or 50% above the guideline range. And this court has stated in Yuma and Singh, understanding those are somewhat different facts, that there's an ambiguity as to whether the judge got it right on that. Is she really thinking about what Asia did or is she thinking about what everybody did? That the best course there is to remand it and the court will go ahead and say, you know what, I had it right and this is what you deserve. Or they'll say I had it wrong and I should not have upwardly varied. That's our ask. All right, thank you. Thank you very much. All right, we'll hear from the government, Mr. Keefe. Good morning and may it please the court. My name is Brendan Keefe. I represent the government in this appeal. The government respectfully asserts that this court affirmed the judgment of the district court and in so doing conclude that there was no error, let alone plain error, in the district court's reliance on an erroneous fact because it did not rely on an erroneous fact. That there was no error, let alone plain error, that the court relied on the same conduct for an enhancement that it used to rely on for an upward variance. And third, that the sentence imposed 36 months was not substantively unreasonable because such a sentence, given this case's unique set of facts and circumstances, a 36-month sentence is not shockingly high. Opposing counsel spends much time on the A111 quote from the district court. Obviously a person who drags another person with a car or who puts the car in gear and someone is standing in front of it is a person from whom the public needs to be protected. As this court mentioned a few minutes ago, a reasonable interpretation of that is that either one of these instances, the first one where Ms. Ryan is not the driver but is involved as a passenger, or the second one where Ms. Ryan is the driver of the vehicle, either one of those is sufficient either for the enhancement or for the upward variance that defense counsel is speaking about. However, I will point out that this court held in 2018 that this court must be left with a definite and firm conviction that a mistake has been committed. I would submit that in defense counsel's brief, in two places, page 15 and page 17, the defendant states that there is a reasonable likelihood, that's 15, and reasonable probability, that's 17, that the court got it wrong, quote unquote, or relied on an erroneous fact. The reasonable likelihood or reasonable probability is just not the standard. The standard is that this court must be left with a definite and firm conviction that an error occurred, and the government submits that that just is not the case here. That being said, should the court find that there was an error and it was clear, the next step is that the defendant's substantial rights were affected, and as this court mentioned again a few minutes ago, there were other factors that the court relied on in granting the upward variance. For example, the extreme conduct and victim impact, which is, as the court goes into great detail, it's that not only was there physical harm done in incident number two, but there was financial harm done after these robberies. Some of the employees testified that their bonuses were affected by the robberies, that they did not receive bonuses because that merchandise was stolen. And third, that there was psychological effects, psychological harm done to these victims. I'd like to make one other point, Your Honors. Directing the court's attention to page 112 of the appendix, as the court knows, the district court needs to articulate a reason for an upward variance. There's a paragraph in the middle of A112, the facts that the defendant recklessly disregarded the well-being of others and, in fact, injured another person in the commission of the offense. The court feels an upward departure is appropriate. We've often argued, though, that there was no indication of an injury with respect to the mirror hitting the hand. What's your response to that? My response, Your Honor, I believe Mr. McLaughlin said that there was no indication that a hand was struck and that the victim did not even indicate that a hand was struck. On PSR, paragraph 62, I thought he was making a finer point than that. There was no indication of injury. I didn't hear him saying that he was disputing whether the hand was struck. I think, obviously, that's in the PSR, but he was saying to the extent that she's referencing injury, there was no indication of that. Well, it's a reasonable inference, Your Honor, that someone who is standing in front of a car and that the defendant puts it in gear and makes eye contact, they make eye contact, and then rushes off and the hand is struck by a vehicle, I think it's absolutely a reasonable inference that an injury occurred as a result of that. That's your burden, isn't it, before the district court for purposes of sentencing? The question is, is it the government's burden? If you're claiming a victim was injured, it's your burden. Correct. I mean, it is possible just to have a car sideswipe someone, hit someone, and they're not to be injured. And so we just don't know in this case. Well, injury or not, the court relied on the fact- The question is whether striking someone, coming into physical contact with someone and hitting a police car is enough for the judge to say this is a very aggressive, this is someone committing crimes in a very aggressive manner without regard to injury. Right. The enhancement under section 3C1.2 is risk of injury. It's not actual injury. It's risk of injury. So driving and weaving in and out of traffic, putting your car in gear while someone's standing in front of it is, of course, risking injury to that person, to the citizens driving their cars in traffic. And I believe the defendant is not arguing that the enhancement shouldn't apply. So I think there's certainly enough in the record for the enhancement under 3C1.2 to apply. And again, the factors in support that the court lists for reasons that the variance was issued, Your Honors, is extreme conduct and victim impact, defendant's repeated disregard of her prior lenient sentence, of which the district court makes a significant amount of time going through the eight convictions that the defendant had, all of which were suspended sentences. And it's handwritten, not handwritten, but typed out in the statement of reasons, specifically the defendant's disrespect for the prior lenient sentences. Other factors are seriousness of the offense, the need to provide deterrence and protect the public, need to avoid or warranted sentencing disparities and provide restitution to the victims, the fact that the defendant engaged in, quote, a violent series of brazen thefts that caused terror to the victims. For all those reasons, the court issued its upward variance, Your Honors. If there are no further questions, the government respectfully requests that this court affirm the judgment of the district court. All right. Thank you. Mr. McLaughlin, you have two minutes and rebuttal. Thank you, Your Honors. Just briefly, I appreciate, Your Honor, being clear with the government in terms of what my representations are because I don't want to make any misrepresentations to the court. I have not argued that there's no evidence that the individual in incident number two wasn't struck. It says it's struck. It says it in the PSR. The only reference in the PSR, well, there's zero references in the PSR to injury. The only reference to injury throughout the entire record is in relation to the August 27 incident where the wife testified that the husband was injured by being dragged by the car. As the government stated at the end, listen, there's a whole bunch of other reasons here which would have supported an upward variance. I'm not disagreeing with that. What I'm pointing out is that when the court decides I'm upwardly varying because of X, there may be A through Z reasons, but I'm upwardly varying because of X, and X is factually erroneous,  and when I look at 112, the X is, in fact, injured another person in the commission of defense. That is the stated basis for variance, and thus the reason we're asking for variance. Whether it's plain error or not, whether that is clear from the record, and, you know, the defense counsel didn't stand up and say, Your Honor, to the extent you're basing it on the incident where she was not the driver. So the question is, is it a plain error, or could this record be read in two different ways? And I'm agreeing that it is plain error because defense counsel did not stand up and say, Your Honor, you can't rely on that one. So thank you. Take care. Thank you both. We'll reserve the decision. Okay. The last case being argued today is United States v. Gannett Media Corp. Good morning. May it please the court. My name is Mike Greigel from Greenberg Traurig in Albany. With me this morning is Kelly McNamee, who worked on the briefing that was submitted to this court. We represent Intervenor Repellent, Gannett Media Corporation, the publisher of the Rochester Democrat and Chronicle. The newspaper's position, Your Honors, is that the September 19, 2022 order entered by the district court, which we refer to throughout in our briefing to this court as the redaction order, violated both the First Amendment and the common law, which establish a presumptive right of public access to judicial documents. Let me turn to the constitutional analysis first. To justify the extraordinary remedy of sealing court documents and removing them from public scrutiny, there's a four-part test that is no doubt familiar to the court. A couple of those elements are, as relevant here, there has to be a substantial probability of prejudice to a compelling interest, and there has to be a showing that any restriction on access entered by a court order is narrowly redacted. And moreover, and importantly, the district court has the obligation to find specific findings on the record as to how that standard has been satisfied in a particular case. Here, the district court failed to make any such factual findings that would justify the continued removal of fairly wide swaths of information from public scrutiny pursuant to the redaction order. Instead, what we end up with here is three, as I understand the redaction order, three tiers of information. There were two findings, I guess, and the question is whether they're sufficient or not. One was privacy. Yes. And the other was protecting the robust and candid functioning of DOJ's internal processes. Correct, Your Honor. I'll deal with the privacy first, Judge Bianco. Judge Nathan in her decision When you do that, could you also bear in mind what I think we might treat as another finding, which is the district court's disclosure to you that none of the redacted material or the sealed material revealed misconduct? Yes. I think that is the most complex part of the analysis, Judge Radjo, so I will come to that. Certainly. The privacy interest, Judge Bianco, I respectfully submit is easily dismissed. If you look at Judge Nathan's decision in the Southern District from last summer in the United States v. NEJAD before she was elevated to this court, similar situation, closely analogous facts. A prosecution that was derailed by repeated systemic violations during the discovery process. The defendant in that case was allowed to walk after a jury conviction. Judge Nathan says, I want to get to the bottom of this, find out how this happened, how the government could end up letting a prosecution get so derailed. Just because your time is limited, we're not talking here about whether the judge sealed an inquiry, such as the inquiry Judge Nathan conducted. Correct, Your Honor. We're talking about a judge's decision to seal the reason it decided not to conduct an inquiry itself. Yes. Correct, Judge. So that's a difference right there that I think you're going to have to deal with. Okay, and the way we deal with that, Judge Rodger, is this. It seemed to me that a main theme of the government's opposition in this court and the district court below, I think it's fair to say, chastised us for this. Essentially saying we don't know what those records show and they don't show anything about prosecutorial misconduct. Well, the point on that is what the government submitted, what the Western District of New York submitted to the district court, influenced the district court not to conduct an evidentiary hearing. The same thing happened in the Nijad case. And Judge Nathan said that the court has determined not to impose further sanctions based on these papers alone without a public hearing weighs further in favor of public disclosure. So that argument really doesn't carry any weight, at least according to the rationale of the Nijad case. And moreover, I think that when the district court says, and she goes further, by saying, and this is in Special Appendix 12 of the redaction order, public access does not play a role in the functioning of the process, the DOJ internal review process. We respectfully but emphatically submit that that misframes the nature of the public interest implicated by the redaction order. It's not so much a question of whether public access is going to influence or play a role in the internal deliberative process of DOJ. It is, will it help the public understand in a positive way the functioning of the district court's determination to examine and receive a submission that influenced its decision making not to conduct a hearing and not to go forward in imposing sanctions. The Nijad case, the Stevens 1 case, the Stevens 2 case, which we cited in our briefing, all follow that pattern. And none of those cases were the substantive rights of the defendants at issue any longer because the government misconduct in prosecuting those cases was so pervasive and so systemic that the convictions were vacated by motion of the government. Nevertheless, in all three cases, the courts held that the public interest with respect to judicial documents that are related to severe prosecutorial misconduct has an extremely high degree of public interest because of the resultant value of that information to those who monitor the federal courts. And we submit that the same principle applies here, Judge Ratzlaff. Why was the information that the judge did disclose on reconsideration not sufficient? Again, the question is why was the judge not conducting a hearing itself? Why was the court not conducting a hearing itself? The judge referenced both matters before the prosecutor's office and matters before the Department of Justice. What more do you think needs to be disclosed to the public to understand the judge's reasoning for not conducting a hearing itself? I think, Your Honor, first of all, the notion that this can be withheld because we misconstrued the nature of the underlying information effectively reverses the burden of proof. And here, it seems to us our position... We're not talking about a litigant telling you what the underlying information is. We're talking about the judge. I understand, Judge Rodger. I understand. And the position here is that absent a showing on the record in findings made by the district court judge that disclosure would compromise... Of the information that remains sealed, that disclosure would compromise a compelling government interest. The one that was identified by the district court is to preserve the robust and candid internal deliberative process of the DOJ. Well, that may be a legitimate public interest in certain circumstances. But here, there's no factual showing by the court, no argument by the Western District of New York that disclosure will compromise that interest. I thought your core argument was that the court, in her opinion, said the court was considering whether it should sanction any members of the prosecutorial team. That that was the whole genesis of what the court was considering. And as a result of this sealed submission, the district court decided not to do that. And your argument is that you have no idea what the basis for that was. Isn't that really the core argument? That although there are items in the portions that were unsealed that show how they're going to prevent things from happening in the future, that there is nothing in there that suggests why the court decided that it was unnecessary for the district court to determine whether or not the prosecutorial team should be sanctioned for what occurred in front of her. Precisely, Judge Bianco. And I think that was the reasoning that largely characterized Judge Nathan's decision. In EJAB, the public here has a very strong interest in the integrity of the criminal justice process in the Western District of New York. Your argument is that nothing in the portions that have been unsealed that give you any indication of why that was sufficient for that purpose. That's correct, Judge Bianco. And that it's constitutional error, according to this court's longstanding precedent, not to have specific findings of fact on the record that demonstrate or explain how disclosure of the information that remains redacted would compromise the effective review process of the Department of Justice. All right, thank you. Thank you, Your Honor. You have two minutes in rebuttal, and we'll hear from Ms. Slate. Good morning, Your Honor. May it please the court. My name is Tiffany Lee, and I represent the United States. The district court here did not abuse its discretion, nor under closer scrutiny of this court, when it denied in part and granted in part the intervener Democrat and Chronicle's motion for reconsideration as it pertained to its earlier decision to seal the government's submissions. Detailing the steps that the government planned to take in order to address issues which had arisen during the underlying criminal prosecution, this court should affirm. Your Honors, the district court appropriately applied the legal standards which have been set forth by this court when it comes to the presumptive right of access under both First Amendment jurisprudence and under the common law. It basically assessed the weight of the presumptive right of access with respect to this particular submission that it, sua sponte, had sought. The government agrees we're also under the First Amendment here. We're not just under the common law, right? That is correct, Your Honor. We've said in numerous cases, as was pointed out, that there has to be specific factual findings, that has to be narrowly tailored. And there was a portion of the district court's July 20th opinion that said, while under certain circumstances it might be more appropriate to articulate those interests in greater detail to the public, under these circumstances where the presumption is not strong, basically, I don't need to do that. And my question to you is, isn't that incorrect? In other words, if we're under the First Amendment, you have an obligation in every case, then, to put very detailed findings on the record of how the compelling interest that's being identified warrants the ceiling, right? You're not operating on a continuum at that point. You have to make the specific findings, right? I understand, Your Honor. Privacy is not sufficient. We've said over and over again, just saying privacy is not a sufficient finding, right? Correct. But, Your Honor, the initial decision also talked about the nature of, like, attorney grievance information, or whether or not there's any investigation taking place. And I would actually refer, Your Honors, to the September 19th decision. But OPR, there's all sorts of public information out there in the Department of Justice manual. The U.S. Attorney's Office manual talks about, in incredible detail, all the various procedures for allegations by a court of misconduct, that it starts off with a review by OPR, then it can go to an inquiry, then it can go to an investigation. So, none of that is secret. That's all out there, right? Correct, Your Honor, and that's why, on reconsideration, the district court made the determination that with respect to general processes that were going to be engaged by the Department of Justice with respect to any allegations of misconduct. Although still redacted, all the high-level leaders in the Department of Justice and in your office will be involved in making sure this doesn't happen again. What's the basis for that? I think the basis for that was just to promote... The government specifically requests that? Because, again, if you look in the government's website, its manuals, everywhere it says it goes through these people in domain justice, and they approve it, and then they'll go to this person. There's no secret about who the people are who are, at the high level, who are involved in these processes, right? What's the secret? Your Honor, I think it was just in order to protect just the identities and work product to the extent... Usually there's secrecy, whether at the grand jury or attorney disciplinary proceedings, because the target may be clear, and then there's no need to disclose this. But now we're talking about the people who are going to be involved, and surely isn't the public entitled to know that a judge chose not to conduct an inquiry because it was being handled by the assistant attorney general rather than, for instance, a summer intern. So, I mean, Judge Turco points out a lot of this is public anyway, but to the extent these people are named in your filings, who they are is a matter of public record anyway. Why is this being withheld? Your Honor, the matter of public record in terms of the specific individuals who may be responsible for drafting reports to the department, to the attorney general, I mean, that could change. To the extent you have disclosed them in your filings. I mean, they're not asking for anything that's not disclosed. You disclosed this to the district judge. Why shouldn't it be a matter of public record? Your Honor, it's the government's assertion that in whole, that when we're dealing with individuals who are involved in the deliberative process, that they not be identified until the final, until a final report has been generated. I could show you dozens and dozens of procedures in the Department of Justice where routinely, death penalty, getting approval for an appeal to the Second Circuit, where everybody knows who the people, Title III, who's involved in the approval process. That's correct, Your Honor. So how is this any different? These are high-level people who are publicly disclosed as being involved in all these different, very important decisions. And somehow, who those people are in this important case is being concealed from the public. And it obviously, as Judge Dredge pointed out, makes a difference how high of a level the people who are conducting this review are, right? Your Honor, that is correct. I think, though, the main scope of issue in terms of the sealing, in which the government would press remains sealed, is any determination in terms of the status of any inquiry that's being conducted. Right now... Let me just focus on that, because as I indicated at the end, I think that is the core issue here. And you can correct me if I'm wrong, but the district court said the whole reason the hearing was being considered, or I guess maybe the primary reason, was to consider whether it should sanction any members of the prosecutorial team for what had occurred in the district court's presence, which the district court said was credible evidence of intentional misconduct, right? Your Honor, there was credible allegations in order to merit an evidentiary hearing in relationship to the defendant's motion to dismiss the indictment. What the district court was considering was whether or not to sanction the prosecutorial team, right? Wasn't that what the hearing was going to be about? No, the main source of the hearing, Your Honor, was about whether or not... In the September 19th decision, the court was considering whether to sanction any members of the prosecutorial team, right? Uncover, and this is another portion of that same, uncover and remedy any prosecutorial misconduct that might have occurred. Your Honor, it was trying to uncover prosecutorial misconduct for the purposes of the underlying case in which... And what was the district court going to do with that? Potentially sanction the prosecutorial team, right? But the main goal was, Your Honor, to determine whether or not the indictment, the new indictment that was before the court should be... Or, excuse me, the previous indictment, which had been dismissed without prejudice, should be dismissed with prejudice. The inquiry was into whether or not there was good faith conduct on the part of the government during... Your Honor, they pled, though. This is after they pled, right? Isn't this the district court's discussion after they pled and that issue was over? Correct, but the district court itself said, especially when you read her September 19th decision, this was not about... She felt she had the authority in light of to be able to oversee the conduct of attorneys before her. She just needed to know, are there going to be steps taken by the government in terms of to address issues? Let's assume that was going to be the primary purpose of this hearing, which the court decided not to have. What portion of the unsealed, the things that the district court unsealed, would give the public any indication of why the sealing, why the filing was sufficient as related to the prosecutorial team and whether or not they needed to be sanctioned? There's nothing in there about that. The portions that were unsealed relate to making sure this doesn't happen again and have these procedures in place to make sure this never happens again, but it says nothing about the team, right? Your Honor, it does provide, again, the general process in which the government would engage in terms of detailing or investigating or... But isn't the public's interest in knowing that that is going on, that it has gone on to a certain stage in the process, that in light of those circumstances, the judge was prepared not to conduct a hearing himself? The fact that such a hearing is possible but might not be going on doesn't tell the public that there was good and sound reason for the district court not to act further. What am I missing? I think the district court was relying on the efforts on the descriptions in terms of the three categories. One, the status of whatever may or may not occur vis-a-vis any internal investigation. Why this should be sealed, and I want to, because your time's running out, I want you to consider one other matter. The district court emphasized the disciplinary proceedings are rarely open to the public, but that might be true with respect to attorneys generally whose conduct in private litigation raised concerns, whatever. This is the public prosecutor, and one might really say that the client in that case is the public. Why is the public not entitled to know if its attorney has engaged in misconduct? And for our purposes, why isn't the district court's failure to consider the unique position of the United States attorney vis-a-vis the public a problem with us just saying there's no abuse of discretion here? Help me out. I think the district court was careful to note in her orders that she did appreciate the significant nature of the government's role with respect to prosecutions. What she had before her for that evidentiary hearing was the discreet issue of whether or not to dismiss, to reconsider her earlier dismissal of the indictment, this time with prejudice, based on this conduct that had occurred during the discovery process amongst the parties. What does the public know about the government's intent or efforts to address the credible evidence of intentional misconduct by the prosecutors in this case? What does the government know about that? The government knows- What does the public know about that? What does the public know? The public knows that there is a process in place within the department- But they have no idea whether any of that process is being utilized here. They know zero. They know there's a process, but they know zero about whether or not the government has taken a single step to address what was credible evidence of intentional misconduct in a criminal case. Am I wrong about that? No, Your Honor. I believe there's enough- If you read- What good is there knowing about the processes if they don't know whether or not the government has taken any action? What good is knowing that there's a great process unless they know whether or not the government has invoked that process? Because there is- Chief Judge Wolfert specifically said that the portion that's being sealed relates to the status of any process. Can I ask a follow-up, Judge? Sure. I know you're out of time. I think you said earlier that one of the interests here was preserving the confidentiality of these materials until a final decision or report is rendered. Does that mean that the government expects to report back to the district court, Judge, we've completed our inquiry, and now the redactions can be removed and everything can be unsealed because we've finished? With respect to potentially the members who are involved in that discussion in the investigation and what remedial actions to take in terms of the discovery issues that took place, there is potentially a revisiting with the district court to say, well, the final report is now out within other entities of the Department of Justice, in which case, you know, whoever ended up finishing and signing off on the product could be discouraged. I interpret that to mean it's possible, but you're not assuring us that it will happen. Is that a fair- I would say it's fair for now, but to the extent this court ordered that to happen, obviously, the U.S. The government doesn't usually do that voluntarily. In other words, I thought in the briefs any findings of misconduct usually are not made public, right? Well, no, in terms of like- Internally, internally. Okay, internally. If the Department of Justice finds, once they complete their investigation issue, their findings, unless there's been a couple of instances where the names have been released, but usually there'd be no release of the findings, right? So to Judge Merriam's question, I'm just talking about identity of high-level officials working on a report, potentially, which is on the discovery issues, not the attorney misconduct issues. As for the attorney misconduct issues in terms of what's currently sealed right now. So there's two different swaths of information, right? There's certain information that the district court had sealed in terms of identities of people working on these internal discussions, you know, in terms of how to report discovery and mishandling and how to go forward with that. That is different. That report is different than any- Okay, I misunderstood which report we were talking about. I thought you were talking about if there was going to be any type of review of the misconduct in this case by OPR, whether or not that would be made public at some point. No, I could not make any representation as to that because- Okay, I misunderstood. That was my fault. Yeah, so no, my apologies too. All right, thank you. Thank you. Okay, Mr. Greggel, you have two minutes. Very briefly, Judge Bianco. And I'm going to just pick up quickly on the points made by Judge Raji and yourself in questioning Attorney Lee. First, on the standard of review, again, this court's precedence could hardly be clearer that where a matter implicates a public right of access to court records or proceedings, that an independent de novo review is what's called for, not a lenient, abusive discretion review. Second, again, we don't have here anything on this record that shows how disclosure of the information remains sealed by the court, why it must remain sealed to protect the DOJ's interest in its candid internal deliberations. Without such specific factual findings on the record, it's constitutional error not to disclose that information. May I just get a sense of how significant this is? As Judge Bianco pointed out, it's a matter of public record how DOJ conducts these investigations and steps and who's involved. So can't you basically infer that if there is an investigation, these officials will be involved and then you can Google who those officials are right now? Well, I would submit, Judge Raji, that point actually cuts in our favor of public access, and here's why. Because as we indicated in the appendix, and this is part of the information that has been unredacted that's now been made available, at page 386, footnote 2, the government makes the point that in cases implicating a significant public interest, DOJ's Office of Professional Responsibility makes its investigative reports public. I have one of them here. We pulled a couple just to look, and this one is dated December 20, 2013. The cover features the names of the AUSAs who were called on the carpet and fired for their discovery violations that were the subject of this particular report. It would seem, now to be sure.